# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTERSTATE BAKERIES CORP., et al., | ) | Case No. 04-45814 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| INTERSTATE BAKERIES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 09-4138 |
| | ) | |
| SEAN DECKARD, | ) | |
| | ) | |
| Defendant and Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RANDALL VANCE, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION

When Defendant Sean Deckard became a participant in the Interstate Brands Companies Welfare Benefit Plan in 2004 and when he was terminated as an employee in 2006, the Plan's administrator and employer, Hostess, Inc., failed to give Deckard the statutorily required notices concerning his health insurance coverage rights. Although the companies continued to provide health care coverage for Deckard until August 20, 2008, almost two years after the end of his employment – at no cost to Deckard – Deckard filed an administrative claim in this Chapter 11 case asserting that he had been damaged by the administrator's failure to give him the required statutory notices and asking the Court to order the Debtor to pay substantial civil penalties as provided by statute.

29 U.S.C. § 1166(a) requires a group health plan administrator to give plan participants a notice of their post-employment health insurance coverage rights, *i.e.*, a "COBRA" notice, upon the commencement of a participant's coverage under the plan and upon a "qualifying event," such as the termination of the participant's employment. 29 U.S.C. § 1132(c)(1) provides for a civil penalty

of up to $110 a day for the failure to give these notices. The assessment of such penalties is within the broad discretion of the Court.[1]

The central issue now before the Court on competing motions for summary judgment is whether these statutory penalties should be assessed against the Debtor, Interstate Bakeries Corp. ("IBC"), for its admitted failure to provide the required notices to Deckard.

For the reasons stated below, the Court finds that civil penalties against IBC are not warranted under the applicable law and the uncontroverted facts. Accordingly, the Court will grant in part (and deny in part)[2] IBC's motion for summary judgment and will deny Deckard's motion for partial summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[3] In a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of genuine issues of material fact.[4] Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings; self-serving allegations or mere assertions of disputed fact are insufficient to defeat the motion.[5]

---

[1] *See Starr. v. Metro Systems, Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006).

[2] IBC's motion seeks relief in addition to a declaratory judgment on the central issue.

[3] Fed. R. Bankr. P. 7056.

[4] *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983).

[5] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005).

## BACKGROUND

Despite the lengthy history of this adversary proceeding and Deckard's administrative claim, the facts are, for the most part, straightforward and largely undisputed.[6]

### A.    Deckard's Employment and Termination

1.   Hostess, Inc. hired Deckard on May 20, 2004, as an employee in St. Louis, Missouri.

2.   On December 1, 2004, Deckard became a "participant" in the Interstate Brands Companies Welfare Benefit Plan ("Plan").

3.   The Plan is an "employee welfare benefit plan" under § 3 of the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1002(1)).  IBC is the "sponsor" and "administrator" of the Plan, 29 U.S.C. § 1002(16), and CIGNA is the third-party claims administrator.

4.   It is Hostess's practice to distribute a Summary Plan Description ("SPD") to all participants upon their entry into the Plan.  The SPD contains the notices Hostess was required to give Deckard under 29 U.S.C. § 166(a)(1), including a "COBRA" notice.[7]

5.   However, Hostess has been unable to locate documents evidencing the distribution of the SPD in the plant where Deckard worked at the time of his entry into the Plan, and the people employed in that area that might have knowledge of its distribution are no longer with the company. Consequently, Hostess cannot confirm whether the SPD was provided to Deckard on or near his eligibility date.

6.   Deckard alleges, and IBC concedes for purposes of its motion for summary judgment, that Deckard did not receive the required COBRA notice at the time he became eligible for coverage under the Plan.

---

[6] IBC actually disputes several facts regarding the damages Deckard alleges he suffered.  Further, some of the damages alleged resemble benefits more than damages (*e.g.*, Deckard's use of lower cost, generic medicines), and some are wholly unsubstantiated by the evidence offered in support of Deckard's motion.  However, civil penalties are not warranted even if the Court assumes, for purposes of this motion, that Deckard "suffered" all of these damages.

[7] "COBRA" is the popular name for the Consolidated Omnibus Budget Reconciliation Act of 1985, found at 29 U.S.C. §§ 1161-69.  COBRA amended and became part of ERISA.

7. It is also Hostess's practice to distribute COBRA notices to its employees on or near their termination date. But Hostess cannot confirm whether this notice was provided to Deckard.

8. Deckard alleges, and IBC concedes for purposes of its motion for summary judgment, that Deckard did not receive the required COBRA notice on or near his termination date.

9. Since Deckard's termination, Hostess has implemented a program that automatically tracks whether COBRA notices have been given, both at plan entry and at termination.

10. Deckard was determined to be disabled under the Social Security Act as of September 1, 2006.

11. Deckard's employment with Hostess terminated on or about September 11, 2006, but Hostess did not process his termination until August 20, 2008.

**B.     Deckard's Post-Termination Health Care Coverage**

1. Deckard retained health care coverage under the Plan – at no cost to him – until August 20, 2008, when Hostess cancelled his health care coverage retroactive to September 11, 2006.

2. Shortly thereafter, CIGNA began attempts to recover from Deckard's healthcare providers benefits that had been paid on Deckard's behalf since his termination date.

3. On February 1, 2009, Deckard became eligible for Medicare A and B health insurance coverage.

4. On May 28, 2009, Hostess revoked the cancellation of coverage under the Plan and reinstated Deckard's healthcare coverage through his Medicare eligibility date.

5. From August 20, 2008 to May 28, 2009 – the period Deckard's health care coverage had been cancelled – CIGNA recovered $2,441.83 from Deckard's health care providers,[8] and four health care providers recovered a total of $693.38 from Deckard. When Deckard's coverage was reinstated, CIGNA refunded all of the money it had recovered, and Deckard's health care providers refunded all but $229.97 that they had collected from him.[9]

---

[8] CIGNA did not pay the providers interest on the refunded money, but there has been no suggestion that the providers have attempted to recover that interest from Deckard.

[9] Apparently, the amount not refunded to Deckard represented co-insurance payments that he was obligated to make.

4

6. Notably, if Deckard had obtained healthcare coverage under the Plan during the 29-month period from his termination date to his Medicare entitlement date, the premiums would have cost him approximately $8,200. Also during that period, the Plan paid $19,335.17 in health claims on behalf of Deckard.

7. All medical claims submitted by Deckard between his termination date and his Medicare entitlement date have been paid in full.

**C.     Deckard's Appeal to the Plan Administrator**

1. On September 1, 2009, Deckard submitted a claim for alleged benefits due to him and an appeal under the terms of the Plan.

2. The Plan's "Appeal Subcommittee" considered Deckard's claim for alleged benefits due, and on October 15, 2009, the Subcommittee denied Deckard's claim.

3. The Subcommittee found, *inter alia*, that all claims submitted under the plan had been properly paid, that the revocation of the cancellation of coverage was properly handled, and that CIGNA had certified that all such claims had been paid in accordance with the terms of the plan.

**D.     Deckard's (Alleged) Damages**

1. Deckard avoided and postponed seeking medical attention that he could not afford.

2. Deckard suffered stress because he postponed medical care because of a lack of insurance coverage.

3. Deckard had to pay unsubsidized retail prices for prescription medications.

4. Deckard had to resort to less expensive, generic medications.

5. Deckard had to expend additional effort to obtain necessary medicines because his on-line pharmacy would not fill his prescriptions.

6. Deckard had to rely on others to obtain his medications for him.

7. Paying retail prices for Deckard's medications caused him stress.

8. Deckard suffered demands for payment by medical service providers, their collectors, and CIGNA's collectors.

9. Deckard's credit rating was adversely affected.

10. Financial demands from collectors and providers caused Deckard stress.

11. Deckard's providers were slow to refund money after reversal of the "claw backs" and, even then, the providers did not pay him interest on those refunds.

**E.      Procedural Background**

1. On April 6, 2009, Deckard filed a "Supplemental Application for Administrative Expense" in the main bankruptcy case (Case No. 04-45814, Document No. 12063),[10] seeking a claim against IBC; IBC's Senior Vice President-Finance and Treasurer, J. Randal Vance, as the Plan Administrator;[11] and CIGNA for essentially the same relief Deckard seeks in this adversary proceeding.

2. In response, on July 10, 2009, IBC filed an objection to Deckard's Application in the main case and initiated this adversary proceeding, seeking a declaratory judgment absolving (on multiple grounds) IBC (and Vance) of any liability to Deckard. In its objection, IBC requested that the Court consolidate proceedings on Deckard's Application with the adversary proceeding.

3. Deckard consented to the consolidation of the two proceedings and filed a counterclaim and third-party complaint against Vance in the adversary proceeding.

4. These motions for summary judgment ensued.

## DISCUSSION

As a preliminary matter, the Court disposes of Deckard's claim for civil penalties against IBC for Hostess's failure to give Deckard the COBRA notice required upon Deckard's enrollment in the IBC group health plan. Count IV of IBC's complaint alleges that this claim is barred by the applicable statute of limitations, and the Court agrees.

---

[10] The docket indicates that this was Deckard's first application for administrative expense, despite his notation that it was a "Supplemental" application.

[11] The uncontroverted facts (*see* A.2 above) establish that IBC, not Vance, was the Plan Administrator. Deckard has not offered any legal or factual basis to sustain a claim against Vance. Moreover, as noted below, the Court's determination that all of Deckard's claims against IBC are without merit, absolves Vance from any liability to Deckard as well.

ERISA does not contain a statute of limitation so courts look to the most applicable state law to determine the appropriate limitation period.[12] The Court has not found any decisions in the Eighth Circuit applying a Missouri state-law statute of limitation to an ERISA violation. However, the Eighth Circuit Court of Appeals has held that North Dakota's three-year statute of limitations concerning actions "upon a statute for a penalty or forfeiture, if the action is given to the party aggrieved"[13] applies to actions to impose a penalty under ERISA § 502(c) – the same statute under which Deckard proceeds here.[14] Missouri has an almost identical statute. Mo. Rev. Stat. § 516.130 establishes the same three-year statute of limitations for actions "upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved."[15] Therefore, the Court will apply a three-year statute of limitations to Deckard's claims.

Deckard's coverage under the Plan commenced on December 1, 2004. Therefore, Deckard needed to bring a claim by December 1, 2007 for Hostess's failure to provide a COBRA notice "at the time of commencement of coverage under the plan."[16] Deckard did not initiate legal action on his claims against the Debtors until April 6, 2009, when he filed a "Supplemental Application for Administrative Expense" in the main bankruptcy case (Case No. 04-45814, Document No. 12063).[17] Deckard's claim based on Hostess's failure to provide him with initial COBRA notice is therefore barred as untimely.[18]

---

[12] *See Iverson v. Ingersoll-Rand Co.*, 125 Fed.App'x 73 (8th Cir. 2004).

[13] N.D. Cent. Code Ann. § 28-01-17.2.

[14] *Id.*

[15] Mo. Rev. Stat. § 516.130(2).

[16] 29 U.S.C. § 1166(a)(1). *See also Delcastillo v. Odyssey Res. Mgmt., Inc.*, 431 F.3d 1124, 1129 (8th Cir. 2005) ("The obligation to provide an initial COBRA notice attaches at the time of commencement of coverage under the plan.") (quotation omitted).

[17] As previously noted in footnote 10, it appears that this was Deckard's first application for administrative expense, despite his notation that it was a "Supplemental" application.

[18] Even if this claim wasn't time-barred, the Court would exercise its discretion to deny his request for statutory penalties for the same reason it denies his claim for statutory penalties due to Hostess's failure to provide him a COBRA notice upon the termination of his employment.

Deckard's claim for civil penalties against IBC for Hostess's failure to provide him with a COBRA notice upon his termination, on the other hand, is not time barred because it did not accrue until his employment terminated on or about September 11, 2006 (and thus had to be brought by September 11, 2009, which it was).  But this latter claim fails on substantive grounds.

## I.  Civil Penalties

As noted above, whether to impose a civil penalty against IBC for Hostess's failure to give Deckard a COBRA notice upon the termination of his employment lies within the broad discretion of the Court.[19]  The primary considerations in the exercise of that discretion are the prejudice to the employee and the nature of the plan administrator's conduct.[20]  Though relevant, a plan administrator's good faith and the absence of harm to the claimant do not preclude the imposition of a penalty.[21]

Prejudice must be evaluated against the purpose of the COBRA notice, which, as its name implies, is to apprise a group health plan beneficiary of his rights under COBRA.  COBRA requires plan sponsors of group health plans to provide the <u>opportunity</u> for plan beneficiaries who have lost their coverage due to a qualifying event, such as termination, <u>to purchase</u> continued health coverage <u>at a cost of not more than 102 percent of the cost to the plan</u>.[22]  Generally, the obligation to provide post-termination coverage only lasts for 18 months, but the obligation extends to the earlier of 29 months or a beneficiary's Medicare entitlement date if the beneficiary is declared disabled under the Social Security Act during the first 60 days of continued coverage.[23] At the time Deckard's employment with Hostess was terminated, he had already been declared disabled under the Social Security Act.

---

[19] *Starr v. Metro Systems, Inc.*, 461 F.3d at 1040.

[20] *Id.*; *Kerr v. Charles F. Vaterott & Co.*, 184 F.3d 938, 948 (8th Cir. 1999).

[21] *Starr*, 461 F.3d at 1040 (*citing Chestnut v. Montgomery*, 307 F.3d 698, 704 (8th Cir. 2002)).

[22] *See* 29 U.S.C. § 1162(3) (emphasis added).

[23] 29 U.S.C. § 1162(2)(A).

If the purpose of the COBRA notice was to apprise Deckard of his right to <u>purchase</u> health insurance coverage from his termination date to his Medicare entitlement date of February 1, 2009, then that purpose was amply satisfied by IBC's provision of health coverage <u>free of charge</u> until Deckard's Medicare entitlement date. Quite simply, it is ludicrous to contend that Deckard was prejudiced by not receiving notice of his right to purchase something that he was receiving at no cost.

The crux of Deckard's argument is that he suffered damages, and was therefore prejudiced, when IBC cancelled his health care coverage on August 20, 2008, and initiated recovery of amounts paid on his behalf. This argument is unpersuasive.

First and foremost, it fails to proximately or logically connect Hostess's failure to provide Deckard with a COBRA notice upon termination (or enrollment in the Plan) with the damages he allegedly suffered two years later when IBC cancelled his coverage. At the time of his termination, Deckard did not suffer any prejudice for Hostess's failure to provide him with the COBRA notice; he continued to receive health care coverage under IBC's group health plan, and to his great benefit, he did not have to pay for this coverage. IBC's termination of that health care coverage almost two years later was a wholly separate event with distinct consequences. That the cancellation of coverage was retroactive to Deckard's termination date did not transform the consequences flowing from the cancellation to ones stemming from Hostess's failure to give Deckard a COBRA notice. Deckard still enjoyed uninterrupted health care coverage for those two years. The retroactive cancellation triggered CIGNA's "claw-backs" and collection attempts by Deckard's health care providers for benefits provided since his termination, but that didn't actually "undo" the coverage he received. Moreover, most of the damages Deckard alleges he suffered as a result of the cancellation in coverage were rectified when IBC retroactively revoked its cancellation of Deckard's health care coverage, and CIGNA and Deckard's health care providers refunded the amounts "clawed back."

This gap in causation is brought into sharp focus by positing the question: Would Deckard have been any better off if Hostess had provided Deckard notice of his COBRA rights at the time he was terminated? Based on the uncontroverted facts, the Court finds that the answer is "No."

Second, even if there was a causal connection between Hostess's failure to provide Deckard a COBRA notice and the prejudice Deckard allegedly experienced as a result of the temporary

9

cancellation in his health care coverage, the prejudice he experienced was insignificant compared to the benefit he received from two years of uninterrupted free health care.[24]

Finally, the Court finds that IBC's conduct in this matter and with regard to its ERISA compliance procedures outweighs the minimal prejudice Deckard suffered as a result of the temporary cancellation of his health care benefits. As noted, a court is permitted to consider a plan administrator's good faith in determining whether to assess civil penalties under 29 U.S.C. 1132(c)(1). IBC's conduct here was not perfect – providing Deckard free health care until August 20, 2008, was most likely an accident, and IBC could have better handled the cancellation of Deckard's coverage – but good faith does not equate to perfection. Strong evidence of IBC's good faith is its decision to revoke its cancellation of Deckard's health care coverage *without seeking any reimbursement* for the more than $8,000 in premiums Deckard would have had to pay for the health care coverage Deckard received. And there is no evidence that IBC singled Deckard out for mistreatment for some unknown, malicious, or nefarious reason.

Further, in assessing civil penalties, the Court must be mindful of the purpose of those penalties, *i.e.*, "to provide plan administrators with an incentive to comply with the requirements of ERISA and to punish noncompliance."[25] Deckard has not offered any evidence to controvert IBC's statements that, absent mishap, it was providing employees with the necessary COBRA notices at the time Deckard was employed (and terminated) by Hostess, and that IBC has since instituted an automated system to ensure that such notices are given. In the absence of a controversy on this point, the Court finds no purpose to be served in assessing civil penalties against IBC for the apparently inadvertent failure to provide Deckard with COBRA notices.

### III.   IBC's Motion for Summary Judgment - Remaining Issues/Counts

Having disposed of the central issue of whether Deckard is entitled to civil penalties for IBC's failure to provide him the COBRA notices upon commencement of coverage under the Plan and upon his termination from employment, the Court turns to the remaining issues in IBC's motion

---

[24] IBC repeatedly asserts that it provided twenty-nine months of free health care, but Deckard didn't receive any significant benefit from the last nine months, which were provided "retroactively" upon the revocation of IBC's cancellation of benefits.

[25] *Starr v. Metro Systems, Inc.*, 461 F.3d at 1040 (citations omitted).

for summary judgment. The Court's holding on Deckard's entitlement to civil penalties resolves all of the issues raised in Deckard's cross-motion for partial summary judgment.[26]

For the sake of clarity, the Court sets forth its ruling on each count of IBC's complaint here.

### A.     Count I - Granted in Part, Denied in Part.

Count I seeks a judgment: (1) declaring that IBC provided coverage for all benefits due Deckard under the Plan; (2) declaring that IBC owes no money or other relief to Deckard; (3) declaring that IBC is entitled to recover attorneys' fees and costs; and (4) dismissing Deckard's motion for allowance of administrative expense with prejudice.

The Court grants (1) based on the determination by the IBC Plan Appeal Subcommittee finding that Deckard received all benefits due under the Plan. When a welfare benefit plan governed by ERISA (such as the Plan here) gives the administrator discretion to determine eligibility for benefits and construe the terms of the plan, a decision to deny benefits is reviewed for an abuse of discretion.[27] Under an abuse of discretion standard, the administrator's factual determinations will stand "if a reasonable person could have reached a similar decision."[28] A decision to deny benefits (or that additional benefits are not due) is not unreasonable merely because a "different, reasonable interpretation could have been made."[29]

On September 1, 2009, Deckard submitted a claim for benefits and an appeal that invoked the administrative appeal process under the Plan. The Plan conducted a review of Deckard's claim and determined that Deckard had received all of the benefits due under the plan. Deckard has not produced any evidence that the Plan Appeal Subcommittee abused its discretion in denying Deckard's claim for benefits. And Deckard's suggestion that the Subcommittee's determination should be disregarded as a post-hoc rationalization by people with a conflict of interest is without

---

[26] As a practical matter, the Court's ruling here resolves all of the issues in Deckard's Counterclaim as well, inasmuch as the only issue not addressed in Deckard's cross-motion for summary judgment is his request for fees and costs. There is no basis to award fees and costs when Deckard's substantive claims have been denied.

[27] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 346 (8th Cir. 2006).

[28] *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998).

[29] *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 773 (8th Cir. 2006).

merit.[30] Therefore, the Court defers to the findings of the IBC Plan Appeal Subcommittee and finds that Deckard received all of the benefits due under the Plan.

The Court grants (2) based on the immediately preceding finding that Deckard received all benefits due under the Plan and the finding above that he is not entitled to civil penalties under 29 U.S.C. 1132(c)(1).

The Court denies (3) because there is no basis in law or fact to award IBC fees or costs in this action.

The Court grants (4) because the Court has determined that Deckard has no claim against IBC; it is unnecessary for the Court to determine whether Deckard's claim would have been entitled to administrative expense status if he had prevailed.

### B.   Count II – Denied.

Count II seeks a judgment declaring that IBC did not violate ERISA  For purposes of its motion for summary judgment, however, Plaintiff stipulated that it violated ERISA, arguing only that Deckard is not entitled to any compensation or civil penalty for its violation. Consequently, the Court cannot grant IBC summary judgment on Count II of its complaint. However, the Court's ruling denying Deckard's claim for damages and/or penalties for the Plaintiff's ERISA violations effectively moots this Count and it will be dismissed.

### C.   Count III – Granted in Part, Denied in Part.

Count III seeks a judgment: (1) declaring that IBC owes no money or other relief to Defendant; (2) declaring that IBC is entitled to recover attorneys' fees and costs; and (3) dismissing Deckard's motion for allowance of administrative expense with prejudice.

The Court grants (1) and (3) and denies (2) for the reasons stated above.

### D.   Count IV – Granted in Part, Denied in Part.

Count IV seeks a judgment: (1) declaring that Deckard's claim for statutory penalties for the alleged failure to give the initial notice under COBRA is barred by the statute of limitations; (2)

---

[30] A post-hoc rationalization occurs when a plan administrator denies a claim for one reason and manufacturers a different reason when the claim is litigated. *See Erven v. Blandin Paper Co.*, 473 F.3d 903, 901 and n.1 (8th Cir. 2007). An alleged conflict of interest where the same entity is both paying and deciding an ERISA claim does not affect the abuse of discretion standard; it is merely a factor a court may take into consideration in determining whether an abuse of discretion has occurred. *See Glenn v. Metropolitan Life Insurance Co.*, 554 U.S. 105, *, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008).

declaring that IBC owes no money or other relief to Deckard; (3) declaring that IBC is entitled to recover attorneys' fees and costs; and (4) dismissing Deckard's motion for allowance of administrative expense with prejudice.

The Court grants (1), (2), and (4) and denies (3) for the reasons stated above.

### E.   Count V– Granted in Part, Denied in Part.

Count V seeks a judgment: (1) declaring that Deckard's claim for statutory penalties for the alleged failure to give the election notice under COBRA is barred because Deckard did not lose coverage under the Plan and therefore no qualifying event occurred; (2) declaring that Plaintiffs owe no money or other relief to Defendant; (3) declaring that Plaintiffs are entitled to recover attorneys' fees and costs; and (4) dismissing Deckard's motion for allowance of administrative expense with prejudice.

The Court grants (2) and (4) and denies (3) for the reasons stated above. The Court denies (1) because the Court has determined that Deckard is not entitled to statutory (civil) penalties for IBC's failure to give Deckard COBRA notices based on the presumption that a qualifying event occurred.[31]

### F.   Count VI – Granted in Part, Denied in Part.

Count VI seeks a judgment (1) declaring that extracontractual damage, fiduciary and tort-like claims, if any, by Deckard are barred by ERISA; (2) declaring that IBC owes no money or other relief to Deckard; (3) declaring that IBC is entitled to recover attorneys' fees and costs; and (4) dismissing Deckard's motion for allowance of administrative expense with prejudice.

The Court grants (2) and (4) and denies (3) for the reasons stated above.

The Court grants (1) because, as IBC cogently argues, and Deckard has not refuted, that 29 U.S.C. § 1132(a) provides the exclusive remedy for participants or beneficiaries seeking to enforce notice rights under an ERISA plan.[32] And to the extent ERISA does not preempt the non-statutory

---

[31] Moreover, courts are divided over whether the continuation of coverage precludes a finding that a qualifying event occurred. *Compare Gonzalez Villanueva v. Warner Lambert*, 339 F.Supp. 351, 358 (D. P.R. 2004) (no qualifying event if coverage doesn't terminate), with *Burgess v. Adams Tool & Engineering, Inc.*, (908 F.Supp 473, 476-77 (W.D. Mich. 1995).

[32] *See Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 942 (8th Cir. 1999)*; Slice v. Sons of Norway*, 34 F.3d 630, 631-632 (8th Cir. 1994). *See also Pichoff v. QHG of Springdale Inc.*,556 F.3d 728, 732-33 (8th Cir. 2009) (compensatory claims unavailable for ERISA notice violations); *Delcastillo v. Odyssey Resource Management, Inc.*,

claims Deckard asserts in his application for administrative expense, the Court's findings above are fatal to those claims.

### G. Count VII – Granted in Part, Denied in Part.

Count VII seeks a judgment: (1) declaring that Deckard's claims, if any, arose from prepetition events and are not entitled to administrative expense priority; (2) declaring that Deckard's claims, if any, are general unsecured claims entitled to a distribution under, and otherwise discharged pursuant to the Plan; (3) declaring that IBC is entitled to recover attorneys' fees and costs; and (4) dismissing Deckard's motion for allowance of administrative expense with prejudice.

The Court grants (4) and denies (3) for the reasons stated above. The Court denies the relief sought in (1) and (2) because it is unnecessary to make such findings in light of the Court's determination that Deckard has no claim against IBC.

### H. Count VIII – Granted in Part, Denied in Part.

Count VIII seeks a judgment: (1) declaring that Deckard's claims are not entitled to administrative expense priority because they did not benefit the estate; (2) declaring that IBC owes no money or other relief to Deckard; (3) declaring that IBC is entitled to recover attorneys' fees and costs; and (4) dismissing Deckard's motion for allowance of administrative expense with prejudice.

The Court grants (2) and (4) and denies (1) and (3) for the reasons stated above.

### CONCLUSION

For the reasons stated above, the Court denies Deckard's motion for partial summary judgment and grants in part and denies in part IBC's motion for summary judgment. The rulings set out herein dispose of all issues in this adversary proceeding and are final for all purposes. And although not specifically addressed in the body of the opinion, the Court's denial of Deckard's claims against IBC also absolves Vance of any liability to Deckard. A separate order will be entered contemporaneously with this memorandum opinion.

**ENTERED** this 23rd day of September, 2010.

---

431 F.3d 1124, 1130-31 (8th Cir. 2005) (breach of fiduciary duty claims generally not available for ERISA notice violations); *Kuhl v. Lincoln National Health Plan of Kansas City, Inc.*, 999 F.2d 298, 301-305 (8th Cir. 1993) (tortious or deliberate misconduct claims are preempted by ERISA).

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Christopher J. Leopold
Bonnie L. Clair
S. Sheldon Weinhaus